# THE PATERSON, NEWARK AND NEW YORK RAILROAD COMPANY et al.

## v.

## CHARLES KAMLAH.

The defendant, claiming that he had never received compensation for a strip of land used by complainant, brought ejectment therefor; thereupon complainant obtained a preliminary injunction to stay the action, on the ground that it had the legal title to the land; but, being unable to establish it, prayed a discovery, and it also insisted that if it should be unable to establish its legal title, it had an equitable title, which equity ought to protect by decreeing that it retain possession of the premises, and consummate its right thereto by awarding just compensation to defendant.—*Held*, that although the discovery had been made by defendant's answer, the injunction should, nevertheless, be retained, on the ground that the possession of the premises was originally taken with the knowledge of defendant, and continued for about twenty years as part of the complainant's road, with defendant's acquiescence, during which time various negotiations have been had between the parties as to his compensation, and (the land is indispensable to complainant) that complainant may, if necessary, by proceedings under its charter, condemn the land, or, if it has not the power to do so, may make compensation therefor, to be ascertained and awarded to defendant in this court.

Bill for relief.   On motion to dissolve preliminary injunction. Upon bill and answer and affidavits annexed to each.

*Mr. C. L. Corbin,* for the motion.

*Mr. Cortlandt Parker, contra.*

THE CHANCELLOR.

The bill states that in July, 1886, the defendant began an action of ejectment in the supreme court of this state against the complainants, the Paterson, Newark and New York Railroad Company, and the New York, Lake Erie and Western Railroad Company, to recover possession of certain land in Belleville township, in Essex county, described in the bill, and that he is prosecuting the suit to trial and judgment; that the land is part of the railroad route of the Erie Company, and is now in the occupation and possession of that company as part thereof; that at the time of the institution of that suit there were, and had been for a long time, and are now, as many as thirty trains of cars daily running thereon for the accommodation of the public between Newark and Paterson; that the complainants cannot cease to run their trains over the road; that they are forbidden to do so; and that the land for which the action was brought is indispensable to them in the discharge of the duty imposed upon them by their charter; that the Paterson and Newark Railroad Company was incorporated in 1864; that afterwards it was duly organized, and entered upon the business of constructing its road; that it surveyed, and determined upon, and filed its route, which crossed the land in question; that it became necessary for the company to have and use that land; that it thereupon took possession of it, claiming to have a right to it, and that from and ever since such taking possession the land has continuously been occupied as and for part of its route; that such possession was taken contemporaneously with the filing of the route in the secretary of state's office, which took place April 25th, 1865; that in 1867 the Paterson and Newark Railroad Company leased its road to the Erie Railway Company for a term not yet expired;

that through foreclosure proceedings, and certain authorized conveyances, the right of the latter company to the lease and the demised premises, including the land in question, became vested, in 1878, in the New York, Lake Erie and Western Railroad Company, and that under other proceedings in this court the property and franchises of the Paterson and Newark Railroad Company were sold to certain persons who were duly incorporated as the Paterson, Newark and New York Railroad Company, which is now the lawful owner of the land, subject to the lease.

The bill further states that owing to the lapse of time, the changes of the officers of the companies, the death of most of those who had to do with the Paterson and Newark Railroad Company in its early history, the changes of counsel and the death of some of them, and the rather loose and careless manner in which the business of that company was transacted in the first years of its existence, the complainants have great difficulty in determining their rights to the property in question, and greater difficulty still in making proof of them; that a study of the early minutes of the company shows that much of the right of way was given by the owners of the land, and that in such cases it seldom happened that any deed was taken; that sometimes the owners of land signed agreements, more or less formal, evidencing their intention to give such right; that sometimes the agreements stipulated that depots should be established in the neighborhood of the owner's other land, and sometimes they stipulated that fences should be built and maintained by the company, and that sometimes they provided that the road should, within a specified time, be connected with other roads; that the minutes and records show that very little land in the township of Belleville was acquired either by purchase or by condemnation, but that most of that which was acquired by the company was given under a contract that the company would build the road and establish and maintain a station at Belleville; that in 1868 the directors agreed with the contractor to pay him $120,000, for obtaining all then unobtained right of way, which money was paid to him for that purpose, and an entry was made in the minutes that all such right of way had been actually

obtained; that in a suit brought in this court by one De Witt and others it appeared that he and other owners of land crossed by the railroad in the township of Belleville signed an agreement in writing by which they bound themselves to convey the right of way to the company, free of all charge therefor, and licensed the company to occupy it at once, and construct and maintain its railroad there, imposing no condition further than that there should be established, by connection or otherwise, a continuous line of railroad to the city of Newark and also a depot at Belleville; that that agreement, which was made in 1871, had, when the suit against De Witt and others was brought, been lost, and that it still is lost; that in that suit its existence was established and its contents were stated by both parties without any material difference, and that the names of all the signers were not given, but only those who signed in relation to the parcel of land in question in that suit, but that it appeared that there were others. The bill charges that the owners of the land in question in this suit agreed to give the right of way. It further states that it was in 1866 that the company took possession of the land and built its railroad upon it. It prays a decree for specific performance of such agreement as the complainants may be able to establish, and that, if they can establish no agreement nor show cause why they should hold the land, it may be decreed that the defendant convey to them upon receiving from them due compensation to be fixed by this court. The defendant, by his answer, while he denies that the company took possession under or by virtue of any agreement or conveyance, admits that the road was laid over the land many years ago (he says it was in 1867 or 1868), and that the company took possession without protest. It appears by the answer that such taking of possession was with his knowledge. On the filing of the bill an injunction was granted restraining the defendant from proceeding in the action of ejectment. The defendant now moves to dissolve it.

That the complainants had, upon the statements of the bill, a right to the injunction on the ground of discovery cannot be denied. In *Garle* v. *Robinson, 3 Jur.* (*N. S.*) *633*, the com-

plainant alleged seizin of his father for many years before his death and before the making of his will, and possession under the will ever since, and that the defendant for the first time raised a claim to the premises thirty-three years after the death of the complainant's father, through certain persons, and that the complainant could not discover whether any such persons had ever been interested in or connected with the premises. The court granted an injunction to restrain an ejectment by the defendant until an answer should have been made to the complainant's bill for discovery of the character or right in which, and the persons through whom, the defendant claimed, and of the nature and particulars of his claim, and how (not speaking of the proof) he made it out.

The question is whether the complainants are entitled to a continuance of the injunction now that the discovery has been made. The claim for relief presents a double aspect. The complainants insist that they have a good legal title, which, if they can establish it (to which end they pray discovery), will entitle them to a perpetual injunction, and that failing that, they have a good equitable title in which, under the circumstances, they ought to be protected. If the court is satisfied that they are acting in good faith, they are entitled to a continuance of the injunction. They and those under whom they claim have not only been in open and notorious possession of the property as part of their railroad for, as the complainants allege and the defendant admits, about twenty years, but they have had such possession with the full knowledge of the defendant for the whole period, and they have used it and still are using it as part of their very important line of public transportation. Where possession has been taken of land for a public work, and the work has been constructed upon it, but no compensation has been made for the land, if the company in taking possession has acted in good faith under acquiescence of the owner or by mistake as to the property or as to the validity of the authority given it so to occupy, and the property is in public use, equity will not permit the company to be disturbed in its possession, provided it make compensation if equity shall so require. *Tren-*

7

*ton Water Power Co.* v. *Chambers, 1 Stock. 471; Carson* v. *Coleman, 3 Stock. 106 ; Pickert* v. *Ridgefield Park R. R. Co., 10 C. E. Gr. 316; New York and Greenwood Lake R. R. Co.* v. *Stanley, 7 Stew. Eq. 55 ; North Hudson County R. R. Co.* v. *Booraem, 1 Stew. Eq. 450 ; Duke of Beaufort* v. *Patrick, 17 Beav. 60 ; Wood* v. *Charing Cross R. R. Co., 33 Beav. 290 ; Deere* v. *Guest, 1 Myl. & C. 516 ; Greenhalgh* v. *Birmingham and Manchester R. R. Co., 3 Myl. & C. 784 ; Langford* v. *Brighton &c. R. R. Co., 4 Railw. & Canal Cas. 69 ; Powell* v. *Thomas, 6 Hare 300.* If in this case the company has power to condemn, it may, if necessary, take proceedings in condemnation to gain legal title, and it should, under the circumstances, be protected in its possession by this court until it shall have done so. *North Hudson County R. R. Co.* v. *Booraem, ubi supra.* If it has not power to condemn and equity demands that it make compensation, this court should itself ascertain the compensation either by means of an issue or of a reference. And the compensation may thus be fixed, even if the company has power to condemn.

It is argued that the opinion of the court of errors and appeals in *N. Y. & Greenwood Lake R. R. Co.* v. *Stanley, 8 Stew. Eq. 283,* is in contrariety to the views above expressed ; that that court there said that an injunction in such a case as this could not be maintained except where there was an agreement for the land between the defendant, or those under whom he claims, and the company, or those under whom it claims, which has not been carried out, and upon the faith of which there has been an expenditure of money. The court, in the language referred to, was not laying down the rule to govern all such cases, but was speaking merely with reference to the circumstances of that particular case. And if it is to be understood as laying down such rule, this case is within the rule. Where a company has been permitted by the owner of land to take possession of it for the purposes of its railroad, and to occupy it accordingly, and with the necessary expenditure of money adapt it to such uses, and has permitted it so to occupy and use it for a long time, the facts are evidence of an agreement that the company shall have the property upon making proper compensation. In this case, ac-

cording to the answer, the company took possession about 1867 or 1868 (the bill says it was earlier—in 1866), and the defendant permitted it to do so without protest, and in view of negotiations for payment. The defendant offered to convey the right of way, provided the company would grade a certain avenue in connection with its work upon its railroad route. The agent with whom the negotiation was made replied that he would report the offer to the company and that he presumed that it would accept it. Some time after that, an engineer of the company came to the defendant and stated that the offer was refused. Afterwards, and during the lifetime of James Fisk, Jr., there was a project on the part of Fisk, in behalf of the Erie Railway Company, to run trains for rapid communication between New York and Newark, stopping at a station above Belleville, on the defendant's property; the defendant at once called upon Fisk and offered, in case that plan should be carried out, to convey to the company the right of way and land for a depot, but (the answer says) the plan was abandoned. About 1873 he made frequent applications to Mr. Atterbury, an officer of the Erie Railway Company (and afterward of the New York, Lake Erie and Western Railroad Company), in New York, for payment for his land. The claim was recognized by Mr. Atterbury as a valid one, and negotiations were kept up intermittently until about 1882, when Mr. Atterbury requested the defendant to make out a statement of the value of the land, and referred him to the solicitor of the company in this state, who was also a director. The defendant frequently applied to the latter, accordingly, for payment, but without success. It appears from this statement that the company was permitted by the defendant to take possession of his land and build its road upon it, upon the understanding that it was in some way to make compensation for it. The facts as stated by the answer are evidence of an agreement to that effect. The motion to dissolve will be denied, but without costs.